United States District Court
Southern District of Texas
**ENTERED**
November 30, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **ANNE CARL,** *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:21-CV-02133 |
| § | |
| **HILCORP ENERGY COMPANY,** § | |
| § | |
| Defendant. § | |

## MEMORANDUM & ORDER

On November 22, 2021, the Court held a hearing on Defendant's Motion to Dismiss (Doc. 14). The Court took the motion under advisement (Minute Entry dated November 22, 2021). The Court now determines that the motion should be **GRANTED** for the reasons set forth below.

### I. BACKGROUND

This is a proposed class action brought by owners of royalties for gas. Anne Carl and Anderson White, as Co-Trustees of the Carl/White Trust ("Plaintiff"), is the successor in interest lessor of the lease at issue. Defendant Hilcorp Energy Company ("Hilcorp") is the successor in interest Lessee. Defendant operates at least two wells on the lease: Old Ocean Unit 253 (F24-F28) and Old Ocean Unit 249 (F24-F28).

Plaintiff[1] alleges that Defendant has systematically underpaid royalties in violation of the royalty provision of the lease. Paragraph 3, which includes clauses on both gas royalty and free use of gas, states:

---

[1] The Court uses "Plaintiff" in the singular to refer to the Carl/White Trust, of which Anne Carl and Anderson White are Co-Trustees.

> *[Gas Royalty Clause] The royalties to be paid by Lessee are: . . . (b) **on gas**, including casinghead gas or other gaseous substance, produced from said land and sold or **used off the premises** or in the manufacture of gasoline or other product therefrom, **the market value at the well** of one-eighth of the gas **so sold or used** . . .*
>
> *[Free Use Clause] Lessee shall have free use of oil, gas, coal, wood and water from said land, except water from Lessors' wells, for all **operations hereunder**, and the royalty on oil, gas and coal shall be computed after deducting any so used.*

Lease Agreement, Doc. 13-1 ¶ 3 (emphasis added).

As to the former, Plaintiff alleges that the gas royalty clause requires royalty to be paid on any gas used off the premises. Plaintiff indicates that Defendant typically uses gas off the lease premises to power the equipment that performs compression, dehydration, treatment, or processing services, or to pay in-kind for off-lease services. As to the latter, Plaintiff alleges that, even absent the royalty provision, the free use clause independently and expressly allows gas to be used only on the lease premises, so royalty must be paid for gas used off the lease premises. The leases of Plaintiff and putative class members contain either or both clauses. This lawsuit arises from the fact that Defendant does not pay for (post-production) use of gas off the lease premises.

Plaintiff brings a single claim, for breach of contract, against Defendant under the Class Action Fairness Act. 28 U.S.C. § 1332(d). After Defendant filed a motion to dismiss the original complaint on August 18, 2021, Plaintiff filed an amended complaint on September 8, 2021. The original motion to dismiss was terminated, and on September 22, 2021, Defendant filed this motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6).

## II.     MOTION TO DISMISS

Defendant Hilcorp argues that the breach of contract claim should be dismissed because Defendant did not violate the clauses at issue. It argues that the lease here is an "at the well" lease under which royalties are subject to postproduction costs; that is, royalties need not be paid on gas used off the premises to increase the value of the raw gas in preparation for downstream sale.

Defendant further argues that the "off-lease use" and "free use" provisions on which Plaintiff relies do not change this structure.

The Court begins by providing relevant context on gas production and "market value at the well" leases. It then considers Defendant's arguments and Plaintiff's counterarguments.

### A.  Background on Gas Production

Production is the process of bringing minerals to the surface. Production for raw gas occurs at the wellhead. *BlueStone Nat. Res. II, LLC v. Randle*, 620 S.W.3d 380, 386-87 (Tex. 2021). A royalty payment, which represents a lessor's fractional share of production from a lease, may be calculated at the wellhead or at any downstream point, depending on the lease terms. *Id.* at 387. Gas royalties are generally free of the expenses incurred to extract raw gas from the land (production costs) but not expenses incurred to prepare raw gas for downstream sale (postproduction costs). *Id.* Because mineral leases are contracts, these general rules may be modified as the parties see fit. *Id.*

Allocation of postproduction costs is a frequently litigated issue. Sometimes the terms of a lease are clear, and sometimes not. *Id.* One helpful law review article describes the basic structure of a royalty clause as "commonly having the mechanics of 'at least three components: (i) the royalty fraction—e.g., 1/8th, 25%, 1/5th; (ii) the yardstick—e.g., market value, proceeds, price; and (iii) the location for measuring the yardstick—e.g., at the well, at the point of sale.'" *Id.* (citing Byron C. Keeling, *In the New Era of Oil & Gas Royalty Accounting: Drafting a Royalty Clause That Actually Says What the Parties Intend It to Mean*, 69 Baylor L. Rev. 516, 520 (2017)).

The "market value" yardstick is relevant in this case. "Market value" means "the price a willing buyer under no compulsion to buy will pay to a willing seller under no compulsion to sell." *Randle*, 620 S.W.3d, at 388. But "the price paid under a gas purchase contract between the lessee

and the purchaser is not necessarily the market price within the meaning of the lease." *Id.* Market value may be more or less than the sale price. *Id.* A mineral lease may account for market fluctuations by setting a ceiling or a floor to address disparities between market value and contract prices. *Id.*

The preferred method of determining market value is by using actual sales that are "comparable in time, quality, quantity, and availability of marketing outlets." *Id.* When comparable sales data are unavailable, an alternative methodology for determining "market value" at a specified valuation point is the "net-back" or "workback" method. *Id.* When the location for measuring market value is "at the well" (or equivalent phrasing), the workback method permits an estimation of wellhead market value by using the proceeds of a downstream sale and subtracting postproduction costs incurred between the well and the point of sale. *Id.* at 388-89.

Strictly speaking, the workback method is not a net-proceeds calculation; rather, it is a market-value proxy. *Id.* at 389. Because postproduction costs are not incurred until after gas leaves the wellhead, and because postproduction costs add value to the gas, backing out the necessary and reasonable costs between the sales point and the wellhead is accepted as an adequate approximation of market value at the well. *Id.* Stated differently, "[t]he value of gas 'at the well' represents its value in the marketplace at any given point of sale, less the reasonable costs to get the gas to that point of sale[.]" *Id.* The workback method is based on the premise that "[o]il and gas production is less valuable at the wellhead because any arm's length purchaser will assume that it will have to incur the costs to remove impurities from the production, to transport it from the wellhead, or otherwise to get it ready for sale to a downstream market or the general public." *Id.*

The Texas Supreme Court has held that, where a lease has a "market value at the well" royalty valuation for gas that is subsequently treated and sold at a remote location from the well, value-enhancing postproduction costs are properly deducted from the royalty calculation. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 122-23 (Tex. 1996); *Burlington Res. Oil and Gas Co. LP v. Texas Crude Energy*, 573 S.W.3d 198, 203 (Tex. 2019) ("Courts have recognized that one way [to account for the value added to gas postproduction] is to subtract the costs of bringing the product to the market (the post-production costs) from the sale price obtained at the market"); *see also Piney Woods Life Sch. v. Shell Oil Co.*, 905 F.2d 840, 858 (5th Cir. 1990) ("*Piney Woods IV*") (in case applying analogous Mississippi law, holding that "[l]ogic and equity dictate that all of the plant fuel value is a processing cost; none of this fuel survives to be marketed by any of the working interest owners . . . the cost of plant fuel must be borne by royalty owners in proportion to their royalty share").

### B. Gas Royalty Provision

Plaintiff argues that the gas royalty clause requires royalty to be paid on <u>any</u> gas used off the premises. This argument is unavailing. In this case, the lease at issue provides that royalties on gas are to be paid based on "the market value at the well of one-eighth of the gas so sold or used." Lease Agreement, Doc. 13-1 ¶ 3. Applying the methodology set forth above for this "market value at the well" lease, the Court finds that postproduction costs must be deducted from the royalty calculation.

As the Texas Supreme Court explained in *Burlington Resources*, "[a]though parties may define post-production costs any way they choose, the term generally applies to processing, compression, transportation, and other costs expended to prepare raw oil or gas for sale at a downstream location." 573 S.W.3d at 203. The Texas Supreme Court has also approved of

payments made to third parties in-kind when that gas is used to further post-production operations. Such payments are generally not subject to royalty. *French v. Occidental Permian Ltd.*, 440 S.W.3d 1, 10 (Tex. 2014). Here, the lease does not define "post-production expenses" in any unique way. Further, the Complaint acknowledges that produced "[g]as is typically used off the lease premises to power the equipment that performs compression, dehydration, treatment, or processing services, or to pay in-kind for off-lease services." Doc. 13 ¶ 5.

Thus, the Court concludes that these "off-lease" uses are post-production costs that are properly excluded from the royalty calculation pursuant to the Gas Royalty Clause.

### C. Free Use Provision

The proposed class consists of lessors with leases containing a provision requiring royalties for gas "sold or used off the premises" and/or a provision stating that Hilcorp has "free use" of gas for operations on the lease. Under Plaintiff's interpretation of these provisions, gas can only be used <u>on the lease premises</u>, so a royalty must be paid for any gas used off the premises. Defendant, on the other hand, argues that these provisions do not preclude lessees from deducting gas used as fuel or in-kind payment for post-production services in "market value at the well" leases.

Defendant cites various state and federal cases to support its position. For example, in *Piney Woods IV*, several of the leases in question contained the same "sold or used off the premises" provision as in the lease here. *See Piney Woods Country Life School v. Shell Oil Co.*, 539 F. Supp. 957, 960 (S.D. Miss. 1982) (describing the lease language that was interpreted in *Piney Woods IV*). The Fifth Circuit, applying analogous Mississippi law, found that "the market value at the well" language controlled and that the lease operator could deduct the cost of gas used as fuel for post-production services. *Piney Woods IV,* 905 F.2d at 858. Because the use of plant fuel "materially enhances the value of the gas (giving royalty owners more than the at-the-well

value for which they bargained), the cost of plant fuel must be borne by the royalty owners in proportion to their royalty share." *Id.* at 857.

Moreover, in *French*, the lease operator contracted with a midstream processor to separate gas from hydrogen and naturally occurring carbon dioxide, with which the Plaintiff had flooded the field during production. 440 S.W.3d at 6-7. The separated gases were then reinjected into the field to facilitate continued extraction, while the midstream processor was permitted to keep a percentage of the now-clean natural gas liquids as payment in-kind. *Id.* at 7. The lease operator did not pay royalties to lessors on the gas used for these in-kind payments. *Id.* The Court held that, under a "market value at the well" lease with the same "sold or used off the premises" language as Plaintiff's, the cost of the gas kept in-kind must be "considered in determining the market value of the gas at the well." *Id.* at 10.

Defendant posits that its reading of the royalty provision <u>does not</u> render meaningless the "sold or used off the premises" or "free use" provisions; rather, the three can be read in harmony. For example, the requirement that Hilcorp pay royalty on gas "sold or used off the premises" obligates Hilcorp to pay royalties on produced gas for purposes that are unrelated to post-production activities, such as using such gas to fuel drilling a well on another lease. Likewise, the clause granting Hilcorp "free use" of gas on the lease premises permits Hilcorp to use produced gas without paying royalties for on-lease activities, like drilling another well on the lease.

The Court finds the cases cited by Defendant persuasive. It agrees with Defendant that applicable state and federal law requires applying the "market value at the well" provision as the "critical clause," *see Heritage Res., Inc.*, 939 S.W.2d at 121, in interpreting the lease agreement at issue.

### D. Plaintiff's Counterarguments

Plaintiff's Response centers on its interpretation of *Randle*, a Texas Supreme Court decision issued this year. Relying on that case, Plaintiff argues that the "sold or used off the premises" and "free use" clauses require the lessee to pay full royalty for gas used off the premises, regardless whether the lease agreement contains a "market value at the well" provision.

Defendant rebuts that Plaintiff's interpretation of *Randle* is unavailing, and that the case is inapposite here. Defendant notes *Randle* did not interpret a lease agreement subject to a "market value at the well" royalty valuation that allowed for deduction of post-production costs. The court in *Randle* first determined, at length, that the lease at issue was not a "market value at the well" lease and did not allow for deduction of post-production costs. Only thereafter did the court determine that royalties were owed for gas used off-lease. *Randle*, 620 S.W.3d at 391-93. The court interpreted a printed lease form that provided for royalties to be calculated based on the "market value at the well" together with an addendum that included a superseding clause providing for royalty based on "gross value received" and "without deduction" for post-production costs. *Id.* at 384-85. The court held that the clause in the addendum took precedence over the conflicting "market value at the well" clause in the pre-printed form. *Id.* at 393. Thus, the basis of Hilcorp's motion—that a "market value at the well" lease allows for the deductions at issue here—is not addressed in *Randle*. The Court agrees with Defendant and finds that *Randle* does not supersede *Burlington Resources*, *French*, or *Heritage*.

Plaintiff also argues that the Court should not resolve the above questions about the lease provisions at the 12(b)(6) stage. However, the Court interprets Paragraph 3 of the lease as a <u>matter of law</u>, determining that Defendant is entitled to deduct value-enhancing postproduction costs under this lease.

### E. Leave to Amend

An amended pleading may change the Court's analysis. As noted above, the Complaint alleges that "[g]as is typically used off the lease premises to power the equipment that performs compression, dehydration, treatment, or processing services, or to pay in-kind for off-lease services." Doc. 13 ¶ 5. The Court has concluded that these off-premises uses constitute postproduction costs that increase the value of the raw gas in preparation for downstream sale. However, Plaintiff may amend the Complaint to include allegations, if any, that Defendant is using gas off the lease premises for purposes *unrelated* to post-production activities and failing to pay royalties for those uses.

\*      \*      \*

For the reasons above, the Court **GRANTS** the motion to dismiss. The Complaint is **DISMISSED WITHOUT PREJUDICE**.

Plaintiff may amend the complaint by December 17, 2021, to the extent Plaintiff alleges that Defendant uses gas off the lease premises for purposes unrelated to increasing the value of the raw gas in preparation for downstream sale.

Signed on November 30, 2021.

*[signature: Keith D. Ellison]*

Keith P. Ellison
United States District Judge